IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

BRIAN JOHNSON,                    §
Institutional ID No. 1057464,    §
                                 §
        Plaintiff,               §
                                 §    Civil Action No. 1:20-CV-00134-BU
v.                               §
                                 §
MONTE L. GRIFFIN, *et al.*,       §
                                 §
                                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE
AND ORDER OF TRANSFER TO DISTRICT JUDGE DOCKET**

Plaintiff Brian Johnson, an inmate with the Texas Department of Criminal Justice

("TDCJ") and proceeding pro se, filed this action under 42 U.S.C. § 1983 on June 15, 2020,

alleging violations of his constitutional rights in connection with a use of force incident at

the TDCJ Robertson Unit in Abilene, Texas. Dkt. No. 1. The Court granted Johnson leave

to proceed in forma pauperis, which subjects his Complaint to the Court's preliminary

screening process under 28 U.S.C. § 1915. Dkt. No. 5. And because Johnson, an inmate,

brings his suit against government officials, his Complaint is also subject to screening

under 28 U.S.C. § 1915A. The United States district judge transferred this case to the

undersigned to perform this screening function. Dkt. No. 6. Johnson later consented to the

undersigned exercising the full jurisdiction of this Court. Dkt. No. 8.

## I. RELEVANT PROCEDURAL HISTORY

As part of the screening process, the undersigned reviewed Johnson's Complaint, as well as authenticated records provided by the TDCJ, and held an evidentiary hearing under *Spears v. McCotter*, 766 F.2d 179, 181–182 (5th Cir. 1985), where Johnson appeared via teleconference and testified. Dkt. No. 13.

After considering Johnson's allegations, the authenticated TDCJ records, and the applicable law, the undersigned found that Johnson's claim for deliberate indifference to serious medical needs against Nurse Jackie Gregory and his claims against Assistant Warden Monte Griffin did not survive screening, and those claims were dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) as frivolous and for failure to state a claim. *See* Dkt. No. 14. Judgment was entered dismissing those claims (Dkt. No. 15), and no appeal was taken by Johnson.

But the undersigned found that Johnson's claims for excessive force against Christopher Burkhart, Brian Minosh, Miguel Langdon, Antonio Sauceda, and Chevy Stinnett survived screening. *See* Dkt. No. 14 at 10-13. And the Court ordered those five defendants to file an answer, motion, or other responsive pleading to Johnson's excessive force claim related to a specific incident on May 14, 2010. *Id*. at 12.

In that same Order, the undersigned explained that while Johnson was able to identify by name only Burkhart and Minosh, he "clearly demonstrated through his *Spears* hearing testimony his intent to bring his excessive force claims against the officers actually involved in the use of force incident on May 14, 2010." *Id*. at 11. The undersigned further explained that "[t]he authenticated and verified records provided by the TDCJ indicate that

five officers . . . were involved in the use of force against Johnson" and that "[t]hese individuals are identified by the use of force reports as" Burkhart, Minosh, Langdon, Sauceda, and Stinnett. *Id*.

Through the Office of the Attorney General for the State of Texas ("OAG"), Minosh and Burkhart filed their Answer on August 30, 2021 (Dkt. No. 19,) and Stinnett and Sauceda filed a Motion to Dismiss on August 30, 2021. Dkt. No. 22. These four defendants have each invoked qualified immunity. Langdon has not been served. Dkt. No. 27. As of the date of this order, all parties have not consented to the jurisdiction by the magistrate judge.

## II.    FACTUAL BACKGROUND

Johnson claims that he was asleep in his cell on the morning of May 14, 2019, when he awoke to find his cell door open and Burkhart standing at the door. Dkt. No. 1 at 4; Tr. 1:05–37.[1] Burkhart ordered Johnson to strip out for "rec and dayroom," but Johnson told Burkhart that he preferred to stay in his cell. Tr. 1:38–1:50. Burkhart ordered Johnson to "strip out anyway," an order which Johnson admits he did not immediately follow because he did not wish to leave his cell. Tr. 1:52–2:02, 4:28–57. Eventually, Johnson began to comply by removing his shirt and handing it to Burkhart. Tr. 2:05–2:10.

According to Johnson, as he handed his shirt to Burkhart, Burkhart suddenly sprayed him in the face with a chemical agent and then struck Johnson in the left eye with the bottom ridge of the chemical canister causing Johnson's eye to swell closed. Tr. 19:30–48, 20:30–21:00. Burkhart then "slammed" Johnson to the ground (Dkt. No. 1 at 4, Tr.

---

[1] Transcript ("Tr.") citations refer to the audio record of *Spears* hearing held on May 18, 2021. Dkt. No. 13.

23:32–51), where Johnson claims he was "kicked, punched, [and] sprayed a couple more times" while he was "face down on the ground." Tr. 23:05–18.

Johnson testified that several other officers "came to assist" Burkhart and participated in the use of force. Dkt. No. 1 at 4, Tr. 2:20–2:35. Johnson also testified that the officers were "trying to hurt me." Dkt. No. 18 at 28. Collectively, these officers comprised the five-man team Johnson claims used excessive force. Johnson alleges that these officers hit him, kicked him in the head, choked him, repeatedly sprayed him with chemical agent, and "wrenched" his foot and arm, all while Johnson remained passive and face down on the ground. Tr. 28:30–42, 29:11–29:40. Johnson claims that "nothing happened as far as to justify using the chemical agent." Dkt. No. 18 at 20. He denies acting aggressively towards Burkhart in any way prior to the use of force and denies punching, hitting, or pushing any of the officers at any time during the incident. *Id*. at 26. He also denies struggling or resisting at any time during the incident except for trying to breathe. *Id*. at 26, 30.

As a result of the use of force, Johnson claims that he suffered a fractured hand, torn ligaments in his left hand, a torn left rotator cuff, a swollen left eye, and various lacerations and knots to his head. Tr. 10:00–14:25. He claims to have undergone at least two surgeries as a result of these injuries. Dkt. No. 18 at 7.

### III.    MOTION TO DISMISS UNDER RULE 12(B)(1)

Stinnett and Sauceda filed a Motion to Dismiss under Rule 12(b)(1) and Rule 12(b)(6) arguing that: (A) Johnson's claims against them in their official capacities are barred by the Eleventh Amendment and (B) "[u]nder § 1983, neither a state nor a state

official sued in his official capacity for damages is a 'person' for purposes of liability." Dkt. No. 22 at 2-3.

1. Legal standards for motions to dismiss under Rule 12(b)(1)

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The general rule is that "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

This general rule, however, is not without exception, and one such exception is relevant here. While Eleventh Amendment immunity and the "no person" defense and are related defenses, they are distinct in nature.[2] And when a defendant asserts both, as here, a court should first determine the "no person" defense. *Vt. Agency of Natural Res. v. U.S. ex. rel. Stevens*, 529 U.S. 765, 779-84 (2000); *U.S. ex rel. King v. University of Texas Health Sciences Center-Houston*, 544 F. App'x 490, 494-95 (5th Cir. 2013). *Stevens* involved a *qui tam* action under the False Claims Act ("FCA") against the state of Vermont. The state argued that it was not a "person" under the FCA and also that the suit was barred by the

---

[2] For example, even where a state has waived its Eleventh Amendment immunity, it may still not be a "person" under the relevant statute. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997).

Eleventh Amendment. While acknowledging the obvious importance of subject matter jurisdiction, the Supreme Court there instructed:

> We nonetheless have routinely addressed *before* the question whether the Eleventh Amendment forbids a particular statutory cause of action to be asserted against States, the question whether the statute itself *permits* the cause of action it creates to be asserted against States (which it can do only by clearly expressing such an intent). When these two questions are at issue, not only is the statutory question "logically antecedent to the existence of" the Eleventh Amendment question, but also there is no realistic possibility that addressing the statutory question will expand the Court's power beyond the limits that the jurisdictional restriction has imposed.

*Stevens*, 529 U.S. at 779 (internal citations omitted).

While observing the close relationship between the two issues, the Supreme Court made clear the order in which the issues should be resolved by the district court:

> The ultimate issue in the statutory inquiry is whether States can be sued under this statute; and the ultimate issue in the Eleventh Amendment inquiry is whether unconsenting States can be sued under this statute. This combination of logical priority and virtual coincidence of scope makes it possible, and indeed appropriate, to decide the statutory issue first. We therefore begin (and will end) with the statutory question.

*Id*. at 779-80.

*Stevens* and *King* both involved the definition of a "person" under the FCA. And while that specific issue is not present here, the principle should be equally applicable when defining a "person" under other statutes as well, including Section 1983. And while the Fifth Circuit does not appear to have directly answered this question, the Seventh Circuit has held that the Supreme Court's decision in *Stevens* applies to Section 1983 actions. *See Power v. Summers*, 226 F.3d 815 (7th Cir. 2000) (citing *Stevens* as the reason "the district

court should have dismissed the official-capacity claims before addressing the Eleventh Amendment defense") .

2. <u>Discussion and analysis</u>

    a. <u>The "no person" defense</u>

With the above authorities in mind, the undersigned first addresses Stinnett and Sauceda's argument that "[u]nder § 1983, neither a state nor a state official sued in his official capacity for damages is a 'person' for purposes of liability." *Id*. at 2-3. And existing precedent makes clear that they are not.

In *Will v. Mich. Dep't of State Police*, the Supreme Court held that a suable "person" under Section 1983 does not include a state, a state agency, or a state official sued in his official capacity for damages.[3] 491 U.S. 58, 71 (1989). The rationale underpinning this conclusion is that a Section 1983 claim against a person in that person's official capacity is, in effect, a suit against that person's office, and thus is no different than a suit against the state itself or the government entity that employs the person. *Id.*

Here, while the Court liberally construed Johnson's allegations to state claims of excessive force against Burkhart, Minosh, Langdon, Sauceda, and Stinnet, the undersigned failed to clearly state that the only such claims that survived screening were those against these defendants in their personal capacities. The fact that personal liability claims were the only legally cognizable claims plausibly alleged by Johnson does not excuse the undersigned's lack of clarity.

---

[3] In contrast, a state official sued in his official capacity for *prospective* relief is a "person" for purposes of Section 1983, but Johnson has not sought prospective relief here.

Thus, application of the rule announced in *Will* here compels the conclusion that Johnson's official capacity claims against Stinnett and Sauceda should be dismissed. While Stinnett and Sauceda bring the "no person" defense under Rule 12(b)(1), the undersigned finds that this defense is more appropriately addressed through either the preliminary screening statutes or Rule 12(b)(6). Here, because these official capacity claims should not survive screening, they should be dismissed under the screening statutes, 28 U.S.C. §§ 1915 and 1915A, as frivolous and for failure to state a claim upon which relief may be granted. The official capacity claims against Burkhart, Minosh, and Langdon should be dismissed on the same basis.

### b. The Eleventh Amendment bar

Alternatively, should the district court prefer to address the question of subject matter jurisdiction first, Johnson's official capacity claims are also barred by the Eleventh Amendment. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (stating that "[w]e twice have held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity" (citing *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir.1998) (extending Eleventh Amendment to TDCJ); *Aguilar v. TDCJ,* 160 F.3d 1052, 1054 (5th Cir.1998) (extending immunity to TDCJ's officers acting in official capacity))).

### c. Recommendation

For the above reasons, the undersigned recommends that the district judge dismiss Johnson's official capacity claims against Sauceda, Stinnett, Burkhart, Minosh, and Langdon, as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915 and 1915A. In the alternative, should the district court prefer to

address the Eleventh Amendment issue first, the district court should (1) grant Sauceda and Stinnett's motion to dismiss these claims under Rule 12(b)(1) as barred by the Eleventh Amendment, and (2) dismiss *sua sponte* Johnson's official capacity claims against Burkhart, Minosh, and Langdon as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915 and 1915A.

### IV.    MOTION TO DISMISS UNDER RULE 12(b)(6)

Next, Stinnett and Sauceda move under Rule 12(b)(6) to dismiss Johnson's excessive force claim on the bases that (A) Johnson failed to allege enough facts to plausibly support a claim that Stinnett or Sauceda were personally involved in the alleged excessive force incident, (B) Johnson failed to allege enough facts to plausibly support a due process claim, and (C) Stinnett and Sauceda are entitled to qualified immunity. *See* Dkt. No. 22 at 3-8.

### 1. Legal Standards Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a plaintiff's claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, pleadings must demonstrate specific, well-pleaded facts, not merely conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept those well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged by Plaintiffs must "raise a right to relief above the

speculative level." *Id*. at 555. While a plaintiff need not detail specific factual allegations, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The United States Supreme Court remarked in *Iqbal* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citations omitted). In sum, when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead 'two— and only two—allegations . . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (*quoting Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

2. <u>Stinnett and Sauceda's personal involvement in the use-of-force incident</u>.

    a. <u>Discussion and analysis</u>

Stinnett and Sauceda argue that because Johnson was unable to specifically identify them by name in his Complaint or *Spears* hearing testimony, he failed to plausibly allege their personal involvement, as required for Section 1983 liability. Dkt. No.22 at 5. They also appear to argue that it was improper for the Court to identify them through the authenticated TDCJ records as two of the five men involved in the use-of-force incident because those records are not a "public document." *Id.* Stinnett and Sauceda argue that "*any* information—including identities—obtained from the use of force report but not contained in either Plaintiff's pleadings or the *Spears* testimony is extrinsic and is outside the scope of what may be considered in a motion to dismiss." *Id*. (emphasis in original). They make this challenge while simultaneously appearing to concede that those records— relied upon by the Court during the screening of Johnson's claims, not for purposes of their motion to dismiss—indisputably confirm their involvement in the incident.

In support of their argument that the TDCJ records cannot be used by the Court to supplement Johnson's pleadings with their identities, Stinnett and Sauceda cite two cases which state the general rule that a district court may not look beyond the pleadings when ruling on a Rule 12(b)(6) motion.[4] This argument conflates the Court's preliminary screening process under Sections 1915 and 1915A with standards governing motions under Rule 12(b)(6). Here, the Court is not looking beyond the pleadings to identify Stinnett and

---

[4] *Indest v. Freeman Decorating, Inc.*,, 164 F.3d 258, 261 (5th Cir. 1999); *Cinel v. Connick*, 15 F.3d 1338,1341 (5th Cir. 1994).

Sauceda for purposes of ruling on their Rule 12(b)(6) motion because the Court has previously identified them during the preliminary screening process.

Based on Johnson's allegations as detailed in the Order for Answer (Dkt. No. 14), the Court, as part of its screening function, relied on the TDCJ records to identify Stinnett and Sauceda as two of the five officers involved in the incident, along with Burkhart, Minosh, and Langdon. Dkt. No. 32-1 at 9. Stinnett and Sauceda cite no caselaw suggesting such identification was improper, nor is the Court aware of any such authority. Once properly identified, the Court ordered that the docket in this case be conformed to add Langdon, Sauceda, and Stinnett as defendants, along with Burkhart and Minosh who had previously been identified by Johnson.  Dkt. No. 14 at 12. Those five defendants were ordered to answer or otherwise plead to Johnson's excessive force claim*Id.*

After Stinnett and Sauceda filed their Rule 12(b)(6) motion complaining of this Court's identification of them through the TDCJ records, Dkt. No. 22 at 5, the Court—wanting to ensure that only the five officers involved in the incident were named as parties—ordered the OAG to file a *Martinez* report limited to identifying those officers. Dkt. No. 30. In response, the OAG filed a *Martinez* report consisting solely of the same TDCJ records used by the Court to previously identify Stinnett and Sauceda. Dkt. No. 32. Unsurprisingly, the records provided by the OAG confirm that the five-man team consisted of Burkhart, Langdon, Minosh, Sauceda, and Stinnett. *See* Dkt. No. 32-1 at 9. But through that response, the OAG also took the position that:

> While the Office of the Attorney General is complying with the Court's October 21, 2021 Order, it would respectfully note for the record that a *Martinez* report at this juncture of the proceedings is likely improper because

> Defendants Burkhart, Minosh, Stinnett, and Sauceda have already answered
> or otherwise pled. *See Paz v. Idaho*, No. 7:21-CV-0056, 2021 WL 1255184,
> at *3 (S.D. Tex. Mar. 5, 2021), *report and recommendation adopted*, No.
> 7:21-CV-056, 2021 WL 1256844 (S.D. Tex. Apr. 5, 2021) (holding that a
> *Martinez* report is a *pre-answer* investigation by prison officials regarding
> the incident behind a prisoner's lawsuit); *see also Spears v. McCotter,* 766
> F.2d 179 (5th Cir. 1985) (*emphasis added)* [sic].

Dkt. No. 32 at 1 n.1. Given the volume of prisoner litigation in this Court, this ominous

statement by the OAG prompts the undersigned to pause here to briefly discuss the

screening process.

It is important to note that while prisoner litigation undoubtedly accounts for "an

outsized share of filings in federal district courts," the legal system must remain committed

to ensuring that prisoner claims are handled fairly. *Jones v. Bock*, 549 U.S. 199, 203 (2007)

(internal citations omitted). The PLRA was designed to address this challenge by filtering

frivolous claims from those with merit. *Coleman v. Tollefson*, 575 U.S. 532, 535 (2015).

And that responsibility ultimately fell to the district courts.

Consistent with the responsibility to fully develop the facts of pro se prisoners' civil

rights claims, district courts have broad discretion and a wide array of tools at their disposal

to discharge this responsibility. *See e.g., Parker v. Carpenter*, 978 F.2d 190 n.2 (5th Cir.

1992) (discussing the breadth of tools at district court's disposal to conduct preliminary

screening, before citing approvingly to the Fifth Circuit's remand for discovery in *Murphy*

to enable prisoner to state more adequately his claim). Liberal construction rules also serve

to assist district courts in ensuring a fair screening of pro se prisoner claims. *Cooper v.

Sheriff, Lubbock Cnty., Tex.,* 929 F.2d 1078, 1081 (5th Cir. 1991).

Even before the passage of the PRLA in 1996, the Fifth Circuit was "aware of the burdens imposed upon the federal judiciary system by increasing volume of prisoner litigation" and instructed that "[t]he federal courts, and particularly the district courts, must make every effort to devise procedural innovations that will readily separate meritorious claims from frivolous claims and that will encourage informal settlements of grievances while at the same time preserving the plaintiff's rights under 42 U.S.C. § 1983." *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975).

District courts may require prison officials to investigate alleged incidents and create an administrative record for the court's use during the preliminary screening process. *See Norton v. Dimazana*, 122 F.3d 286, 293 (5th Cir. 1997). And the court may rely on that record in determining whether a complaint is frivolous or fails to state a claim. *Id*. It follows that the court may also rely on that same record in determining which claims survive judicial screening and against which defendants.

A *Martinez* report is such an administrative record, intended to assist the district court in assessing prisoner litigation. *Hamer v. Jones*, 364 F. App'x 119, 122 n.2 (5th Cir. 2010) (per curiam). Specifically, *Martinez* reports can aid in clarifying the issues and ensuring the proper identification of parties. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986) (overruled on other grounds not relevant here); *see also Norton*, 122 F.3d at 292; *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam) (noting that the Fifth Circuit has adopted the *Martinez* report as a tool for magistrate judges in civil litigation); *Hamer*, 364 F. App'x at 122 n.2 ("This court has adopted the procedures used

in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), as a tool by which an administrative record is constructed to assist in assessing prisoner litigation under 28 U.S.C. § 1915.").

It was against this backdrop that the Court ordered the OAG to file a *Martinez* report "limited in scope and undertaken solely for the purpose of identifying each individual officer or agent that participated in the use of force incident against Johnson on May 14, 2019." Dkt. No. 30 at 4. And it was in response to this Order that the OAG filed the same TDCJ records used by the Court to identify the five officers, including Stinnett and Sauceda, while suggesting that it was not required to do so despite this Court's Order.

The OAG claims its cited authorities hold" that a *Martinez* report is a *pre-answer* investigation," and as such that this Court's Martinez report Order was untimely.. But neither the Southern District of Texas magistrate judge's Report and Recommendation in *Paz* nor the Tenth Circuit opinion in *Martinez* hold that a *Martinez* report must be limited to the pre-answer phase of the Court's screening. In *Paz*, the magistrate judge  merely characterized a *Martinez* report as one "which contemplates a pre-answer investigation by prison officials regarding the incident behind a prisoner's lawsuit." *Paz v. Idaho*, 7:21-CV-00056, 2021 WL 1255184, at *3 (S.D. Tex. Mar. 5, 2021). This characterization in a Report and Recommendation stops well short of a judicial holding that requires such reports to be ordered pre-answer or not at all.

Similarly, while the Tenth Circuit approved of the trial court's ordering a pre-answer report on the investigation of the incident in question, nothing in the *Martinez* case holds that the report must be pre-answer only, or that the Tenth Circuit's approval of such a report turned on whether it was ordered pre-answer. *Martinez* 570 F.2d at 319 . Indeed, while the

trial court in *Martinez* specifically ordered that "[n]o answer or motions addressed to the complaint shall be filed until the measures set forth herein shall have been taken and completed," nothing in either the trial court's order or the Tenth Circuit's opinion suggests that a district court lacks the authority to order such a report post-answer. *Id.* Here again, the OAG has provided no authority for its premise other than its strained reading of *Paz* and *Martinez*.

Contrary to the OAG's suggestion, screening does not stop once a defendant has been served. *See Cay*, 789 F.2d at 323-24 (finding dismissing a case may occur after service upon additional factual development). At times, the record needs more development because the plaintiffs lack the skills and resources necessary to fully understand the nature of the claims. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2nd Cir. 1983). This may mean additional investigation after service to best uphold the spirit and requirements of the screening process. *Id.* "Regardless of the means used to develop the factual basis of a claim, dismissal under § 1915(d) is appropriate whenever it becomes clear that an IFP complaint is without merit." *Cay*, 789 F.2d at 324. But if a complaint is not frivolous on its face, then "the district court should make an effort to develop the known facts until satisfied either claims have merit or they do not." *Hentz v. Cabana*, 91-CV-63, 1994 WL 499668, at *2 (5th Cir. 1994).

So, it is no surprise that there is a dearth of authority supporting the OAG's premise that the timing of the Court's *Martinez* report Order in this case is "likely improper," particularly occurring as it did while the case was still pending before the undersigned for

judicial screening.[5] Rather, the plain language of Sections 1915 and 1915A, the caselaw interpreting and applying those statutes, and the purpose of the screening process as articulated through the caselaw, all weigh against such a bright line rule for when a Court's authority to screen pro se and prisoner claims ends. Instead, there is overwhelming authority supporting a district court's broad discretion in the context of screening such claims.[6]

The OAG's characterization of this Court's *Martinez* report Order as "likely improper" is particularly vexing given that screening tools such as *Martinez* reports, *Spears* hearings, questionnaires, authenticated prison records—tools that serve to ensure that only meritorious prisoner claims survive—undoubtedly reduce the burdens of this litigation on state prison officials and state attorneys general.

Here, Johnson has alleged a specific incident involving five specific officers, three of whom Johnson was unable, for whatever reason, to identify by name. Regardless, it is undisputed that the five officers who participated in the incident were identified by name and rank through the TDCJ records. Any argument now that the Court should dismiss Johnson's claim because he was unable, with the assistance of the Court, to identify each officer by name must fail. To do otherwise would effectively bestow de facto immunity

---

[5] In contrast, a quick review reveals several instances in which courts in this district and circuit have found that the use of *Martinez* reports post-service was not only proper, but necessary. *See, e.g., Wigenton v. Dixon,* No. 3:14-cv-1313-P-BN, Dkt. No. 31 (N.D. Tex. June 22, 2015) (ordering a *Martinez* report following problems having defendants served while citing *Cay*, 789 F.2d at 323-24 and recognizing that screening procedures, such as *Martinez* reports, are not limited to pre-service considerations); *Narro v. De Soto Police Dept.*, et al, No. 3:17-CV-422-C-BN, Dkt. No. 16 (N.D. Tex. August 3, 2017) ("While a *Martinez* report may be used to facilitate screening prior to service, this Court also has employed *Martinez* reports after service (citing *Wigenton v. Dixon*)).

[6] "As this court made clear in *Spears v. McCotter,*766 F.2d 179 (5th Cir.1985), the district court's *sua sponte* authority to dismiss under § 1915(d) does not end with service. *See also Brown v. Schneckloth,* 421 F.2d 1402, 1403 (9th Cir.) (per curiam), *cert. denied,* 400 U.S. 847, 91 S.Ct. 95, 27 L.Ed.2d 85 (1970)." Cay, 789 F.2d at 323.

upon correctional officers who engage in excessive force, but are somehow able to hide their identity or otherwise avoid being named by the prisoner—including through rendering the prisoner incapable of identifying him—even though the officer's name clearly appears in the prison records. *See Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (finding that while prisoner may not have identified assailants, he offered plausible explanation for inability to do so, and remanding to allow discovery to enable prisoner to adequately identify the officers involved).

The undersigned does not suggest that Stinnett or Sauceda are precluded from arguing that they were not on the five-man team involved in the incident, and thus had no personal involvement. Clearly, any official identified by the Court through the preliminary screening process—including through a review of the TDCJ records—has every right, once identified, to file a Rule 12(b)(6) motion asserting whatever defenses are available under Rule 12 or otherwise. But to allow that defendant to challenge the Court's identification of him through the judicial review of the authenticated prison records—particularly where, as here, his involvement is undisputed—would make a mockery of the preliminary screening process.

Alternatively, Stinnett and Sauceda argue that even if the use of force reports can appropriately be used to identify them, Johnson "puts forth no facts whatsoever—in either his complaint or the *Spears* testimony—which allege any specific actions or indicate any personal involvement by Defendants Stinnett or Sauceda in any use of force." *Id*. at 5-6. This argument lacks support in the record and is directly contradicted by Johnson's well-pled factual allegations. *See infra* II.

b. Recommendation

For the above reasons, and accepting Johnson's well-pleaded factual allegations as true and viewing them in a light most favorable to him, as the Court must, the undersigned finds that Johnson has pleaded enough facts to plausibly support that Stinnett and Sauceda were personally involved in depriving Johnson of his right to be free from excessive force and that they did so under color of state law. *See Arnold*, 979 F.3d at 266. For this reason, the undersigned recommends that the district court deny Stinnett and Sauceda's motion to dismiss Johnson's excessive force claim under 12(b)(6) for failure to plausibly allege either their specific identities or that they were personally involved in the incident.

3. Motion to dismiss for failure to plausibly allege a due process claim

a. Discussion and analysis

Stinnett and Sauceda argue that "[t]here are no facts set forth in Plaintiff's complaint regarding what right he has been so deprived absent due process of law such that Fourteenth Amendment violation could be inferred." Dkt. No. 22 at 6. To the contrary, they argue, Johnson admits to having used the grievance procedure in connection with the use-of-force incident at issue. *Id*. at 7.

The Due Process clause is a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To claim a procedural due process violation the plaintiff must show the process the State provided was not constitutionally adequate. *Id.* at 126. However, a plaintiff must also state their case with enough clarity for the court or an opposing party to determine what is being alleged. *Elliott v. Foufas*, 867 F.2d 877,880 (5th Cir. 1989).

While Johnson states in his Complaint that the various defendants violated his "14th amendment rights" (*see* Dkt. No. 1 at 3), he alleges no facts in support of such a claim. Nor did the Court order any defendant to answer or otherwise respond to a Fourteenth Amendment claim. Dkt. No. 14. Even accepting Johnson's factual allegations as true and viewing them in a light most favorable to him, the undersigned finds that Johnson failed to plead enough facts to reasonably infer that any defendant, including Stinnett and Sauceda, violated his right to due process rights under the Fourteenth Amendment.

b. Recommendation

For the above reasons, the undersigned recommends that the district court grant Stinnett and Sauceda's motion to dismiss Johnson's due process claim under the Fourteenth Amendment. In the alternative, this claim should be dismissed under Sections 1915(e)(2) and 1915A(b).

4. Motion to dismiss based on qualified immunity

a. Discussion and analysis

Stinnett and Sauceda argue Johnson "has not alleged a knowing violation of any clearly established constitutional right" and that he "has not alleged any actions by Defendants Stinnett and Sauceda at all." Dkt. No. 22 at 8. Further, "[a]ssuming [Johnson's] alleged facts to be true, he has not stated a constitutional violation in which Defendants Stinnett and Sauceda were personally involved." *Id.*

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When the qualified immunity defense is raised in a Rule 12(b)(6) motion to dismiss, the court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). In other words, "claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims" and there is no heightened pleading standard in this context. *Arnold*, 979 F.3d at 266.

And while the caselaw makes clear that there is an interest in qualified immunity being addressed at the earliest possible stage of litigation, *see Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018), "this immunity-from-suit interest does not require that the plaintiff's original complaint exceed the short-and-plan-statement standard of Rule 8." *Arnold*, 979 F.3d at 267. "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

A defendant is entitled to qualified immunity unless he (1) "violated a statutory or constitutional right" (2) that "was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 (2011)).

Applying these principles here, Johnson must first allege sufficient facts which, if true, would plausibly support a claim that Stinnett and Sauceda violated Johnson's statutory or constitutional rights. As explained in Section b.2 above, Johnson has satisfied this first prong.

As detailed above, Johnson has alleged facts which, if true, would overcome the defense of qualified immunity. *See Backe*, 691 F.3d at 648. The specific facts alleged would support a reasonable inference that the five officers involved—including Stinnett and Sauceda as identified by the TDCJ records—continued to use force when Johnson was not resisting or struggling. If true, these allegations would plausibly support a claim that Johnson's constitutional rights had been violated. Moreover, the law was clearly established at the time that the continued use of force against a person who is subdued or not resisting is excessive. *See Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (holding that once a person is subdued and no longer resisting, the subsequent use of force is excessive). And while Johnson may not ultimately prevail on his claim, the facts alleged are sufficient to defeat a qualified immunity defense at the Rule 12(b)(6) stage.

b. Recommendation

For the above reasons, the undersigned recommends that Stinnett and Sauceda's motion to dismiss based on qualified immunity be denied without prejudice to their right to re-assert that defense as provided for below.

V.    RECOMMENDATION FOR BRIEFING ON QUALIFIED IMMUNITY

The undesigned notes that Burkhart and Minosh have also asserted qualified immunity in their Answer. *See* Dkt. No. 19 at 2. And recognizing that Rule 12(b)(6)

motions are ill-suited for resolving fact intensive issues such as qualified immunity, *see Thomas v. City of DeSoto*, 3:02-CV-0480-H, 2002 WL 1477392, at *1, n.1 (N.D. Tex. Jul. 8, 2002), the undersigned further recommends that the district judge enter a Scheduling Order specifically tailored to addressing on an expedited basis the issue of qualified immunity through motions for summary judgment. The undersigned further recommends that all discovery be stayed pending a ruling on the motions for summary judgment.

## VI. ORDER ON MOTION TO SUBSTITUTE COUNSEL

Also before the Court is a Motion to Substitute Attorney filed by the OAG on November 15, 2021. *See* Dkt. No. 31. In the Motion. the OAG asks to replace Amy Elizabeth Pletscher with Heather Lee Dyer. . *Id.*

The Court GRANTS the Motions, and ORDERS that the Clerk of Court shall substitute Heather Lee Dyer for Amy Elizabeth Pletscher.

## VII.    TRANSFER OF CASE TO DOCKET OF DISTRICT JUDGE

As of the date of this FCR, all parties have not consented to the magistrate judge exercising the full jurisdiction of this Court. Thus, it is ORDERED that the transfer of this case to the magistrate judge be terminated and the case transferred back to the docket of the United States District Judge James Wesley Hendrix. This case shall now be designated as Civil Action No. 1:20-CV-00134-H.

## VIII.    RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being

served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IT IS SO ORDERED this 3rd day of January, 2022.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE